**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MID-AMERICA CARPENTERS REGIONAL COUNCIL PENSION FUND; MID-AMERICA CARPENTERS REGIONAL COUNCIL HEALTH FUND; MID-AMERICA CARPENTERS REGIONAL COUNCIL APPRENTICE AND TRAINEE PROGRAM; and MID-AMERICA CARPENTERS REGIONAL COUNCIL SUPPLEMENTAL RETIREMENT FUND, <br><br>*Plaintiffs*, <br><br>v. <br><br>DOCK & DOOR INSTALL, INC., an Illinois corporation and MIDWEST DOCK SOLUTIONS, INC., an Illinois corporation, <br><br>*Defendants*. | CIVIL ACTION <br><br> Case No. 24-CV-06428 <br><br> Honorable Judge Wood <br><br> Magistrate Judge Appenteng |

**DEFENDANT, DOCK & DOOR INSTALL, INC.'S
ANSWER TO PLAINTIFFS' COMPLAINT**

NOW COMES Defendant, DOCK & DOOR INSTALL, INC., an Illinois corporation (hereinafter, "Dock & Door"), by and through its attorneys, ALLOCCO, MILLER & CAHILL, P.C., and for its Answer to the Complaint of Plaintiffs, MID-AMERICA CARPENTERS REGIONAL COUNCIL PENSION FUND ("PENSION FUND"); MID-AMERICA CARPENTERS REGIONAL COUNCIL HEALTH FUND ("HEALTH FUND"); MID-AMERICA CARPENTERS REGIONAL COUNCIL APPRENTICE AND TRAINEE PROGRAM ("TRAINEE FUND"); and, MID-AMERICA CARPENTERS REGIONAL COUNCIL SUPPLEMENTAL RETIREMENT FUND ("SUPPLEMENTAL RETIREMENT FUND") (hereinafter collectively referred to as the "TRUST FUNDS"), Defendant Dock & Door states as follows:

## SUMMARY OF ACTION

1. During the course of an audit of DOCK & DOOR, Legacy Professionals, LLP ("Legacy") identified MIDWEST DOCK as a related employer to DOCK & DOOR based upon information gathered by Legacy. Although DOCK & DOOR produced records to Legacy during the audit, DOCK & DOOR and MIDWEST DOCK did not produce all records requested by Legacy related to MIDWEST DOCK and, therefore, Legacy was unable to complete the audit.

**ANSWER:** Defendant Dock & Door is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. As more fully described herein, TRUST FUNDS bring this action against the DEFENDANTS under ERISA because DEFENDANTS breached the provisions of the Memorandum of Agreements, the Area Agreements, the Trust Agreements and the rules adopted by the TRUST FUNDS by failing to produce records required by Legacy to determine whether DEFENDANTS have complied with their obligations to contribute to the TRUST FUNDS and/or by failing to pay amounts owed to the TRUST FUNDS based upon the hours worked by employees and/or subcontractors performing work within the jurisdiction of the Union.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 2.

3. TRUST FUNDS seek to obtain the records necessary to determine the amount of any unpaid fringe benefit contributions owed by DEFENDANTS and to collect all unpaid fringe benefit contributions, interest, liquidated damages, auditors' fees and attorneys' fees and costs.

**ANSWER:** Defendant Dock & Door is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter based on questions arising under Section 502 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") and Section 301 of the Taft-Hartley Act. (29 U.S.C. §§1132 and 185).

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 4.

5. Venue is proper in the Northern District of Illinois, Eastern Division because the TRUST FUNDS are multi-employer employee benefit plans, which are located in and administered in Chicago, Illinois.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 5.

## PLAINTIFFS

6. The TRUST FUNDS receive contributions from numerous employers pursuant to collective bargaining agreements or "Area Agreements" between the employers and the Mid- America Carpenters Regional Council f/k/a Chicago Regional Council of Carpenters (hereinafter referred to as the "UNION"), and therefore, are multiemployer plans. *See* 29 U.S.C. §1002.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 6.

7. The TRUST FUNDS collect contributions on their own behalf and on behalf of other Union-related trust funds which have charged the TRUST FUNDS with the obligation to collect contributions on their behalf.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 7.

8. The TRUST FUNDS provide medical, pension and other benefits to UNION carpenters and other persons pursuant to certain terms and conditions.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 8.

9. An employer bound by the Area Agreements is obligated to pay to the TRUST FUNDS fringe benefit contributions for the hours (i) worked by its employees falling within the scope of the Area Agreement and (ii) by the employees of its non-union subcontractors performing work within the scope of the Area Agreement if the employer has not required the subcontractor to become bound by the terms of the Area Agreement.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 9.

10. The TRUST FUNDS routinely hire certified public accounting firms to review the books

3

and records of an employer bound by the Area Agreement to determine if the employer has paid the fringe benefit contributions required by the Area Agreement for the hours worked by its employees falling within the scope of the Area Agreement and the hours worked by the employees of its non-union subcontractors.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 10.

### DEFENDANTS

11. DOCK & DOOR was incorporated in Illinois on July 11, 2014. DOCK & DOOR is an employer engaged in an industry affecting commerce. DOCK & DOOR entered into a Memorandum of Agreement with the UNION on September 18, 2014, a copy of which is attached as Exhibit A. DOCK & DOOR entered in to a Second Memorandum of Agreement with the UNION on August 15, 2019 reaffirming its obligations, a copy of which is attached as Exhibit B. Exhibits A and B are collectively referred to herein as the "Memoranda."

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 11.

12. In the Memoranda, DOCK & DOOR agreed, among other things to be bound (i) by the provisions of the Area Agreements, (ii) by the Trust Agreements establishing the TRUST FUNDS to which DOCK & DOOR is obligated to make payments under the Area Agreement ("Trust Agreements"), and (iii) by the rules and regulations adopted by the TRUST FUNDS.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 12.

13. The Memoranda, the Area Agreements, the Trust Agreements, and the rules and regulations adopted by the Trust Funds are hereinafter collectively referred to as the "Agreements."

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 13.

14. MIDWEST DOCK was incorporated in Illinois on May 16, 2006. MIDWEST DOCK is an employer engaged in an industry affecting commerce.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14.

15. MIDWEST DOCK is bound by the Area Agreements under the single-employer and/or alter-ego doctrines as set forth for example in *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen*, 724 F.3d 939, 946 (7th Cir. 2013), *Trustees of Pension Funds of Local 701 v. Favia Elec.*, 995 F.2d 785, 789 (7th Cir. 1993), *Chicago Regional Council of Carpenters Pension Fund v. TMG Corporation*, 206 F.Supp.3d 1351, 1356-60 (N.D. Ill. 2016).

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 15.

## GENERAL ALLEGATIONS

16. DOCK & DOOR was formed to provide a means for MIDWEST DOCK to perform jobs that require UNION labor while at the same time avoiding the obligations imposed by the Agreements with the Union.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 16.

17. DOCK & DOOR and MIDWEST DOCK are in the same business.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 17.

18. DOCK & DOOR is in the business of installing and/or repairing loading dock equipment including dock levelers and doors.

**ANSWER:** Defendant Dock & Door denies it is in the business of repairing loading dock equipment and admits the remaining allegations in Paragraph 18.

19. MIDWEST DOCK is in the business of installing and/or repairing loading dock equipment including dock levelers and doors.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 19.

20. The relationship between DOCK & DOOR and MIDWEST DOCK provides a means for the companies to obtain union work and to avoid paying fringe benefit contributions to the TRUST FUNDS for bargaining unit work performed by employees and subcontractors.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 20.

21. The business transactions, management and operations of DOCK & DOOR and MIDWEST DOCK are and have been so interrelated and intermingled that MIDWEST DOCK is bound by the terms of the Agreements.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 21.

22. DOCK & DOOR and MIDWEST DOCK do not maintain an arms-length relationship. DOCK & DOOR is operated and controlled by the owners and management of MIDWEST DOCK as evidenced by the following and therefore the companies have *de facto* common ownership.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 22.

23. DOCK & DOOR only performs work for and at the direction of MIDWEST DOCK. DOCK & DOOR and MIDWEST DOCK have the same customers; the companies for which DOCK & DOOR performs its work are MIDWEST DOCK's customers.

**ANSWER:** Defendant Dock & Door admits it performs work for MIDWEST DOCK and denies the remaining allegations in Paragraph 23.

24. During the period October 1, 2020 to December 31, 2022, DOCK & DOOR received approximately $473,514.50 from MIDWEST DOCK. It did not receive payments from other companies for work.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 24.

25. During the period July 1, 2017 to December 31, 2018, DOCK & DOOR received approximately $1,149,080.75 from MIDWEST DOCK. Again, it did not receive payments from other companies for work.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 25.

26. DOCK & DOOR's records produced to Legacy reveal a lack of normal operating expenses associated with the operation of a company involved in the installation and repair of dock equipment such as dock levelers and overhead doors, such as rent, office staff, and equipment. Accordingly, DOCK & DOOR uses MIDWEST DOCK's office, office staff, and equipment.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 26.

27. The businesses of DOCK & DOOR and MIDWEST DOCK require the use of heavy duty equipment including metal working equipment and welding equipment, and the use of trucks to haul materials and supplies to the jobsites. MIDWEST DOCK has numerous trucks registered to it that are used for this purpose, including trucks like these:







7

DOCK & DOOR has no expenses for trucks and equipment like that shown here. Accordingly, DOCK & DOOR uses the trucks and/or equipment belonging to MIDWEST DOCK to perform work.

**ANSWER:** Defendant Dock & Door denies its business requires the use of heavy duty equipment including metal working equipment and welding equipment, and the use of trucks to haul material and supplies to the jobsites. Defendant Dock & Door admits it has no expenses for trucks like that shown above. Defendant Dock & Door admits it has used trucks and equipment belonging to MIDWEST DOCK to perform work. Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 27.

28. DOCK & DOOR and MIDWEST DOCK share common professional service providers.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28.

29. DOCK & DOOR and MIDWEST DOCK both use Gineris & Associates, Ltd. to perform accounting, bookkeeping, and/or tax preparation services.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29.

30. DOCK & DOOR and MIDWEST DOCK both use First Midwest Bank for banking services.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 30.

31. DOCK & DOOR and MIDWEST DOCK both use the services of a common law

firm, namely Lawrence Kamin Saunders & Uhlenhop, LLC.

**ANSWER:** Defendant Dock & Door is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31.

32. DOCK & DOOR and MIDWEST DOCK both use Cincinnati Insurance Company for insurance purposes.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 32.

33. DOCK & DOOR does not maintain a separate office from MIDWEST DOCK. DOCK & DOOR operates from MIDWEST DOCK's location and, as a result, both companies move from one location to another at the same time.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 33.

34. DOCK & DOOR and MIDWEST DOCK both had a common address of 1249 E. Burville Road, Crete, Illinois as a common business location at the same time.

**ANSWER:** Defendant Dock & Door admits it and MIDWEST DOCK used the same street address listed above in Paragraph 34 at the same time and denies the remaining allegations in Paragraph 34.

35. Then, both DOCK & DOOR and MIDWEST DOCK used 3211 Holeman Avenue, South Chicago Heights, IL as a common business location at the same time.

**ANSWER:** Defendant Dock & Door admits it and MIDWEST DOCK used the same street address listed above in Paragraph 35 at the same time and denies the remaining allegations in Paragraph 35.

36. Then both DOCK & DOOR and MIDWEST DOCK used 27 E. 36th Street, Steger, Illinois as a common business location at the same time and both currently work from that location.

**ANSWER:** Defendant Dock & Door admits it and MIDWEST DOCK used the same

street address listed above in Paragraph 36 at the same time and denies the remaining allegations in Paragraph 36.

37. Invoices issued by DOCK &DOOR to MIDWEST DOCK include the same address for both companies.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 37.

38. For example, this excerpt of invoice 2387 from DOCK & DOOR to MIDWEST DOCK shows the same address of 1249 E. Burville Rd., Crete, IL for both companies:

```
Dock & Door Install Inc.
1249 E. Burville Rd.
Crete, IL  60417-3600
(815)922-5258
ajbrutti@gmail.com

INVOICE

BILL TO                                    INVOICE # 2387
Midwest Dock Solutions                     DATE 12/22/2016
1249 E. Burville Rd.                       DUE DATE 01/21/2017
Unit 8                                     TERMS Net 30
Crete, IL  60417
```

And, this excerpt of an another invoice 6186 from DOCK & DOOR to MIDWEST DOCK showing the same address of 27 E. 36th Place, Steger, IL for both companies:

```
INVOICE                 Invoice Date        Dock & Door Install Inc
                        Jun 15, 2020        27 E. 36th Place
Midwest Dock Solutions  Invoice Number      STEGER IL 60475
27 E. 36th Place        6186
STEGER IL 60475         Reference
                        Clune Stream Data
```

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 38.

39. During the course of its audit, Legacy demanded documents necessary to determine the amount of fringe benefit contributions owed by DOCK & DOOR. The records requested by

Legacy included the payroll records and cash disbursement records of MIDWEST DOCK.

**ANSWER:** Defendant Dock & Door admits the allegations in Paragraph 39.

40. DOCK & DOOR and MIDWEST DOCK have common employees, so there is reason to believe that employees of DOCK & DOOR are being paid through MIDWEST DOCK and/or that MIDWEST DOCK employees are being paid to work on DOCK & DOOR projects without fringe benefit contributions being paid on the employees' behalf.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 40.

41. MIDWEST DOCK is bound to the terms of the Agreements under the single employer or alter ego doctrine.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 41.

42. The Agreements require DEFENDANTS to pay fringe benefits to the TRUST FUNDS.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 42.

43. The Agreements require DEFENDANTS to contribute to the TRUST FUNDS for each hour worked by DEFENDANTS' employees performing work within the scope of the Area Agreements at the rate and in the manner specified in the Agreements.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 43.

44. The Agreements require DEFENDANTS to contribute to the TRUST FUNDS according to the hours worked by the employees of non-union subcontractors performing work within the scope of the Area Agreement which have not signed an agreement to be bound by the Area Agreement with the UNION.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 44.

45. The Agreements require DEFENDANTS to provide all records necessary for the

TRUST FUNDS to determine whether DEFENDANTS have complied with their obligation to contribute to the TRUST FUNDS.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 45.

## COUNT I

37.[*sic*] The PENSION FUND hereby incorporates paragraphs 1 to 44 above as though fully set forth herein.

**ANSWER:** Defendant restates its answers to Paragraphs 1 through 44.

38.[*sic*] DOCK & DOOR and MIDWEST DOCK breached the provisions of the Agreements by failing to produce records sufficient to allow auditors engaged by the PENSION FUND to determine whether DEFENDANTS have complied with their obligations to contribute to the PENSION FUND and/or by failing to pay amounts owed to the PENSION FUND based upon the hours worked by employees and/or subcontractors.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 38.

39.[*sic*] The Agreements require DOCK & DOOR and MIDWEST DOCK to pay liquidated damages, auditor fees, and all attorneys' fees and court costs that the PENSION FUND incurs in the collection process.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 39.

40.[*sic*] The PENSION FUND has complied with all conditions precedent in bringing this suit.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 40.

41.[*sic*] The PENSION FUND has been required to employ the undersigned attorneys to collect the amounts that DOCK & DOOR and MIDWEST DOCK owe the PENSION FUND.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 41.

42.[*sic*] DOCK & DOOR and MIDWEST DOCK must pay attorneys' fees and court costs that the PENSION FUND incurs in this matter pursuant to 29 U.S.C. §1132 (g)(2)(D).

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 42.

43.[*sic*] This Court should award the PENSION FUND, pursuant to 29 U.S.C. §1132(g)(2)(B), interest on the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 43.

44.[*sic*] This Court should award the PENSION FUND, pursuant to 29 U.S.C. §1132(g)(2)(C), an amount equal to the greater of:

(a) interest on the unpaid contributions; or

(b) liquidated damages provided for under the Trust Agreements not in excess of 20% of the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 44.

## COUNT II

45.[*sic*] The HEALTH FUND hereby incorporates paragraphs 1 to 44 above as though fully set forth herein.

**ANSWER:** Defendant restates its answers to Paragraphs 1 through 44.

46.[*sic*] DOCK & DOOR and MIDWEST DOCK breached the provisions of the Agreements by failing to produce records sufficient to allow auditors engaged by the HEALTH FUND to determine whether DEFENDANTS have complied with their obligations to contribute to the HEALTH FUND and/or by failing to pay amounts owed to the HEALTH FUND based upon the hours worked by employees and/or subcontractors.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 46.

47.[*sic*] The Agreements require DOCK & DOOR and MIDWEST DOCK to pay

liquidated damages, auditor fees, and all attorneys' fees and court costs that the HEALTH FUND incurs in the collection process.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 47.

48.[*sic*] The HEALTH FUND has complied with all conditions precedent in bringing this suit.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 48.

49.[*sic*] The HEALTH FUND has been required to employ the undersigned attorneys to collect the amounts that DOCK & DOOR and MIDWEST DOCK owe the HEALTH FUND.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 49.

50.[*sic*] DOCK & DOOR and MIDWEST DOCK must pay attorneys' fees and court costs that the HEALTH FUND incurs in this matter pursuant to 29 U.S.C. §1132 (g)(2)(D).

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 50.

51.[*sic*] This Court should award the HEALTH FUND, pursuant to 29 U.S.C. §1132(g)(2)(B), interest on the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 51.

52.[*sic*] This Court should award the HEALTH FUND, pursuant to 29 U.S.C. §1132(g)(2)(C), an amount equal to the greater of:

(a) interest on the unpaid contributions; or

(b) liquidated damages provided for under the Trust Agreements not in excess of 20% of the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 52.

## COUNT III

53.[*sic*] The TRAINEE FUND hereby incorporates paragraphs 1 to 44 above as though fully set forth herein.

**ANSWER:** Defendant restates its answers to Paragraphs 1 through 44.

54.[*sic*] DOCK & DOOR and MIDWEST DOCK breached the provisions of the Agreements by failing to produce records sufficient to allow auditors engaged by the TRAINEE FUND to determine whether DEFENDANTS have complied with their obligations to contribute to the TRAINEE FUND and/or by failing to pay amounts owed to the TRAINEE FUND based upon the hours worked by employees and/or subcontractors.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 54.

55.[*sic*] The Agreements require DOCK & DOOR and MIDWEST DOCK to pay liquidated damages, auditor fees, and all attorneys' fees and court costs that the TRAINEE FUND incurs in the collection process.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 55.

56.[*sic*] The TRAINEE FUND has complied with all conditions precedent in bringing this suit.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 56.

57.[*sic*] The TRAINEE FUND has been required to employ the undersigned attorneys to collect the amounts that DOCK & DOOR and MIDWEST DOCK owe the TRAINEE FUND.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 57.

58.[*sic*] DOCK & DOOR and MIDWEST DOCK must pay attorneys' fees and court costs that the TRAINEE FUND incurs in this matter pursuant to 29 U.S.C. §1132 (g)(2)(D).

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 58.

59.[*sic*] This Court should award the TRAINEE FUND, pursuant to 29 U.S.C. §1132(g)(2)(B), interest on the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 59.

60.[sic] This Court should award the TRAINEE FUND, pursuant to 29 U.S.C. §1132(g)(2)(C), an amount equal to the greater of:

(a) interest on the unpaid contributions; or

(b) liquidated damages provided for under the Trust Agreements not in excess of 20% of the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 60.

## COUNT IV

61.[sic] The SUPPLEMENTAL RETIREMENT FUND hereby incorporates paragraphs 1 to 44 above as though fully set forth herein.

**ANSWER:** Defendant restates its answers to Paragraphs 1 through 44.

62.[sic] DOCK & DOOR and MIDWEST DOCK breached the provisions of the Agreements by failing to produce records sufficient to allow auditors engaged by the SUPPLEMENTAL RETIREMENT FUND to determine whether DEFENDANTS have complied with their obligations to contribute to the SUPPLEMENTAL RETIREMENT FUND and/or by failing to pay amounts owed to the SUPPLEMENTAL RETIREMENT FUND based upon the hours worked by employees and/or subcontractors.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 62.

63.[sic] The Agreements require DOCK & DOOR and MIDWEST DOCK to pay liquidated damages, auditor fees, and all attorneys' fees and court costs that the SUPPLEMENTAL RETIREMENT FUND incurs in the collection process.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 63.

64.[sic] The SUPPLEMENTAL RETIREMENT FUND has complied with all conditions precedent in bringing this suit.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 64.

65.[sic] The SUPPLEMENTAL RETIREMENT FUND has been required to employ the

undersigned attorneys to collect the amounts that DOCK & DOOR and MIDWEST DOCK owe the SUPPLEMENTAL RETIREMENT FUND.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 65.

66.[*sic*] DOCK & DOOR and MIDWEST DOCK must pay attorneys' fees and court costs that the SUPPLEMENTAL RETIREMENT FUND incurs in this matter pursuant to 29 U.S.C. §1132 (g)(2)(D).

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 66.

67.[*sic*] This Court should award the SUPPLEMENTAL RETIREMENT FUND, pursuant to 29 U.S.C. §1132(g)(2)(B), interest on the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 67.

68.[*sic*] This Court should award the SUPPLEMENTAL RETIREMENT FUND, pursuant to 29 U.S.C. §1132(g)(2)(C), an amount equal to the greater of:

(a) interest on the unpaid contributions; or

(b) liquidated damages provided for under the Trust Agreements not in excess of 20% of the amount that is due.

**ANSWER:** Defendant Dock & Door denies the allegations in Paragraph 68.

Dated: September 9, 2024         Respectfully submitted,

**DOCK & DOOR INSTALL, INC.**

By: /s/ *Todd A. Miller*
      One of its Attorneys

Todd A. Miller (#6216561)
Kathleen M. Cahill (#6269486)
ALLOCCO, MILLER & CAHILL, P.C.
*Counsel for Defendant, Dock & Door*
20 N. Wacker Drive, Suite 3517
Chicago, Illinois 60606
(312) 675-4325 TEL
(312) 675-4326 FAX
tam@alloccomiller.com

17

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record, hereby certifies that he electronically filed the attached, *Defendant, Dock & Door Install, Inc.'s Answer to Plaintiffs' Complaint*, with the Clerk of the Court using the CM/ECF system this 9 day of September 2024, which will send notice of such filings to the following:

> Kevin Patrick McJessy
> McJessy, Ching & Thompson, LLC
> 3759 N. Ravenswood, Suite 231
> Chicago, IL 60613
> (773)880-1260
> mcjessy@mcandt.com

      /s/ *Todd A. Miller*

Todd A. Miller (#6216561)
Kathleen M. Cahill (#6269486)
ALLOCCO, MILLER & CAHILL, P.C.
*Counsel for Defendant, Dock & Door*
20 N. Wacker Drive, Suite 3517
Chicago, Illinois 60606
(312) 675-4325 TEL
(312) 675-4326 FAX
tam@alloccomiller.com